IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DANIEL TEUFEL**, <br><br> Plaintiff, <br><br> v. <br><br> **MARTIN MARSHALL, GREG OLSON, WILLIAM E. KING IV, JIMMIE BARNETT, CYNDIE VARIO JAY, KRISTINA M. VOKT, and DAVID MCCANN**, <br><br> Defendants. | **MEMORANDUM DECISION & ORDER GRANTING FEDERAL DEFENDANTS' [39] MOTION TO DISMISS & GRANTING IN PART DR. DAVID MCCANN'S [42] MOTION TO DISMISS** <br><br> Case No. 2:23-cv-00408-CMR <br><br> Magistrate Judge Cecilia M. Romero |

The parties have consented to the jurisdiction of the undersigned, including entry of a final judgment pursuant to 28 U.S.C. § 636(c) (ECF 48). Before the court are two Motions to Dismiss (ECF 39 & 42). The first is pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6), and is filed by Defendants Jimmie Barnett, William E. King, Martin Marshall, Greg Olson, Cyndie Vario Jay, and Kristina M. Vokt (collectively, Federal Defendants) (ECF 39). The second is filed by Dr. David McCann (Dr. McCann) (ECF 42) pursuant to Rule 12(b)(6). The court also considers Plaintiff David Teufel's (Plaintiff) Responses to the Motions (ECF 52 & 53), Defendants' Replies in Support (ECF 54 & 55), oral argument presented by the parties on June 25, 2024 (ECF 58), and the court-ordered supplemental briefing (ECF 59–62). Having considered the relevant filings, and for the reasons herein, the court hereby GRANTS the Federal Defendants' Motion (ECF 39) and GRANTS IN PART Dr. McCann's Motion (ECF 42).

1

### I.  BACKGROUND

This case involves a former physical science technician for the Department of the Army who alleges to have had his security clearance unconstitutionally revoked and his ability to freely work stripped upon findings of mental disorders against him deriving from a Fitness for Duty Examination (ECF 1 at 4–5). According to the Complaint, Plaintiff was employed by the Army from 2002 until 2011 at Dugway Proving Ground (Dugway) (*id*. at 6). On January 19, 2011, Plaintiff alleges he was ordered to undergo a psychological evaluation relating back to an Incident Report that dated back to November 2, 2006 (2006 Report) (*id.* at 6–7). The 2006 Report involved statements collected that Plaintiff was "paranoid and he was the one responsible for any hostility in the work group" (*id* at 7). At the time of the 2006 Report, Plaintiff filed three active investigations for hostile work environment, equipment damage, and abuse of power by Defendant Olson. *Id*. The matter underlying the 2006 Report was ultimately settled, but the 2006 Report itself "was never cleared out" (*id.* at 7–8).

Plaintiff alleges the psychological evaluation took place after Plaintiff, in February of 2010, raised another concern regarding "unsafe conditions in a Wi-Fi tower system" (ECF 1 at 7–8). On February 15, 2011, Plaintiff was examined by Dr. McCann, who found Plaintiff suffered from Delusional and Paranoid Personality Disorder (*id*. at 10–12). Plaintiff however alleges Dr. McCann was not provided all the personnel records and therefore lacked a "fuller view" of Plaintiff (*id.* at 10). As a result of the evaluation, Plaintiff was allegedly indefinitely suspended from his position at Dugway, and his security clearance was revoked (*id.* at 10–12). The Army Central Personnel Security Clearance Facility (CCF) issued its Notice of Intent to Revoke Security Clearance (the Notice) to Plaintiff on May 18, 2011 (*id.* at 11). Plaintiff alleges the basis of the Notice was based entirely on Dr. McCann's evaluation (*id.*).

Shortly after receiving the Notice, Plaintiff responded to it, providing his home address where he still currently resides (ECF 1 at 12). On April 24, 2012, Plaintiff's previous counsel, from Strindberg & Scholnick, received the CCF's issued Revocation of Security Clearance (*id.*). By June 4, 2012, Plaintiff submitted additional evidence rebutting the findings of Dr. McCann, but the revocation was ultimately affirmed by the CCF on September 11, 2012, via the Reconsideration of Security Clearance Determination (Reconsideration Determination) (*id.* at 13–14).

The Reconsideration Determination informed Plaintiff that he could appeal the Reconsideration Determination to the U.S. Army Personnel Security Appeals Board (PSAB) or the Defense Office of Hearings Appeals (DOHA) (ECF 1 at 14). However, neither prior counsel for Plaintiff, nor Plaintiff received the Reconsideration Determination until January 23, 2017, following a Freedom of Information Act (FOIA) request (*id.*). Plaintiff alleges that Defendant Vario Jay sent or directed the Reconsideration Determination to be sent to Plaintiff's Dugway address and military email and not his home address (*id.*). Plaintiff was therefore allegedly unable to timely appeal the clearance revocation (*id.* at 15).

Regardless, prior to the FOIA request Plaintiff attempted to appeal his indefinite suspension from his position at Dugway to the Merit System Personnel Board (MSPB), but the MSPB denied it and ruled that it lacked jurisdiction over the security clearance revocation which was the basis for the indefinite suspension (ECF 1 at 15). After learning about the Reconsideration Determination, Plaintiff alleges to have submitted an appeal letter to U.S. President Joseph R. Biden, Jr. on January 3, 2021 (*id.*).

Plaintiff asserts three different claims under the Fifth Amendment (ECF 1 at 16–18). First, Plaintiff argues that the Federal Defendants violated his "5th Amendment Due Process rights by unreasonably, and without justification, subjecting Plaintiff to an unwarranted Psychological

3

Evaluation" (*id.* at 16). Plaintiff's second claim is alleged against "Defendant Vario Jay and/or Defendant Does 1-5" and asserts Plaintiff has a "liberty and property interest in maintaining his security clearance with the Army" and by failing to provide Plaintiff the Reconsideration Determination, he was denied the opportunity to be heard which violated his rights under the due process clause of the Fifth Amendment, resulting in Plaintiff being unable to appeal such determination to the U.S. Army PSAB or the DOHA (*id.* at 17). The third claim alleges that Plaintiff's liberty and property interests in maintaining his security clearance with the Army were violated after Defendants Vokt, Vario Jay, Barnett, King, and Doe Defendants failed to provide Dr. McCann with sufficient information to properly evaluate Plaintiff, that Dr. McCann made conclusions lacking sufficient information to do so, and Defendants King, Barnett, Vario Jay, and Vokt failed to remedy or supplement the information provided for Plaintiff's examination (*id.* at 18). Plaintiff seeks monetary relief for his alleged suffered constitutional violations, along with attorney fees, and other costs under *Bivens*.[1]

Under Rule 12(b)(1) the Federal Defendants initially argued that this court lacked subject matter jurisdiction over Plaintiff's claims as the action present a nonjusticiable national security question, and because the matters are "preempted by the Civil Service Reform Act (CSRA) and Title VII of the Civil Rights Act of 1964" (ECF 39 at 2). The preemption arguments under the CSRA and Title VII, however, were not reasserted in their Reply and were confirmed to be withdrawn at oral argument. Under Rule 12(b)(6) the Federal Defendants also argue that the claims are time-barred by the four-year statute of limitations for *Bivens* claims, Plaintiff fails to state a claim for a due process right violation as he has no constitutional protected right in his national security clearance, fails to allege circumstances that implicate a *Bivens* money damage remedy,

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

4

and that they are entitled to qualified immunity (*id.*). Plaintiff responds that the court has jurisdiction over his claims under *Bivens*, his claims are not barred under the CSRA or Title VII, and he has sufficiently pled claims under *Bivens* defeating any Rule 12(b)(6) arguments (ECF 52).

With respect to the third and only claim against Dr. McCann, Dr. McCann seeks dismissal under Rule 12(b)(6) but really argues that the court lacks subject matter jurisdiction over Plaintiff's claims, which is a Rule 12(b)(1) argument. Dr. McCann argues because this is a malpractice case, any claim that Plaintiff could have brought against Dr. McCann is procedurally deficient under Utah Code. Ann. § 78B-3-403(11), (13) (the Utah Malpractice Act) (ECF 42 at 2, 4). Further, Dr. McCann argues that Plaintiff's claims are barred under the Utah Malpractice Act's statute of limitations (*id.* at 3). Plaintiff argues in response that the Utah Malpractice Act is inapplicable, that the court has proper jurisdiction over his claims pursuant to 28 U.S.C. § 1331, and that he has sufficiently pled claims under Rule 12(b)(6) (ECF 53 at 6–8).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for "lack of jurisdiction over the subject matter." "The party invoking federal jurisdiction bears the burden of establishing it." *Lopez v. United States*, No. 223CV00417DBBJCB, 2023 WL 8378516, at *1 (D. Utah Nov. 14, 2023), *report and recommendation adopted*, No. 223CV00417DBBJCB, 2023 WL 8376181 (D. Utah Dec. 4, 2023). "To do so, the plaintiff 'must allege in his pleading the facts essential to show jurisdiction, and must support [those facts] by competent proof.'" *Id.* (quoting *U.S. ex rel. Precision Co. v. Kock Indus.*, 971 F. 2d 548, 551 (10th Cir. 1992)). A federal court must dismiss the action under Fed. R. Civ. P. 12(b)(1) when it appears the court lacks jurisdiction over the subject matter. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Federal courts also "have an independent obligation to determine whether subject-matter jurisdiction exists, even in

the absence of a challenge from any party," and thus a court may *sua sponte* raise the question of whether subject matter jurisdiction exists at any time. *Id.* at 501.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court must accept all well-pleaded factual allegations as true, the court may not accept as true conclusory allegations or legal conclusions couched as factual allegations. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

### III. DISCUSSION

**a. The Court Dismisses Plaintiff's Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Plausible Claim.**

*i. The First and Third Claims Against the Federal Defendants are Dismissed for Lack of Jurisdiction.*

The Federal Defendants begin by arguing that Plaintiff's claims are nonjusticiable and outside of this court's jurisdiction (ECF 39 at 2). For the reasons below, the court finds Plaintiff's first and third claims regard allegations on the merits or motives for the decision to revoke Plaintiff's security clearance and are therefore dismissed as this court lacks jurisdiction over them.

Generally, this court is prohibited from conducting "any external review (including judicial review) of security clearance decisions." *Duane v. U.S. Dep't of Defense*, 275 F.3d 988, 993 (10th Cir. 2002). This is because "an agency derives its authority to grant or deny security clearances from the President's Article II Commander-in-Chief authority," *Sanchez v. United States Dep't of Energy*, 870 F.3d 1185, 1193 (10th Cir. 2017), causing courts to be "reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id.* (quoting *Dep't of Navy v.*

6

*Egan*, 484 U.S. 518, 530 (1988)). Given these implicated national-security interests, an "'outside nonexpert body to review the substance of such' decisions[, like the court], is unreasonable because they require '[p]redictive judgment[s] [that] ... must be made by those with the necessary expertise in protecting classified information.'" *Sanchez*, 870 F.3d at 1193. Thus, "[w]hatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right." *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Hence, matters involving the "merits or motives of a decision to revoke or deny a security clearance" are categorically non-justiciable and dismissed for lack of jurisdiction. *Sanchez*, 870 F.3d at 1192. However, this court may review Plaintiff's claims if there is a claim that an "agency violated its own procedural regulations when revoking or denying a security clearance." *See Duane*, 275 F.3d at 993 ("We are not, however, precluded from reviewing a claim that an agency violated its own procedural regulations when revoking or denying a security clearance, and we may relatedly compel an agency to follow its own regulations.").

To decide whether Plaintiff's security questions presented are justiciable, the court engages in a two-part framework. First, the court decides whether the question presented involves the revocation decision of a security-clearance decision. Second, if it does, the court then determines whether Plaintiff's "claims challenge the merits or motives of that decision." *Sanchez*, 870 F.3d at 1192. If so, the claims must be dismissed. *Id.* If not, the court analyzes whether the alleged constitutional violations "form an independent jurisdictional basis by which the district court could proceed to examine and pass on the merits" of the decision to suspend a security clearance. *Hill*, 844 F.2d at 1411.

Under this standard, the court finds that Plaintiff's first and third claims must be dismissed

7

for lack of jurisdiction as they present nonjusticiable questions. Reading Plaintiff's Complaint, the first cause of action relates entirely to the merits or motives regarding the revocation of Plaintiff's security clearance. Plaintiff's first claim alleges that Plaintiff's medical evaluation "was unreasonable and without justification" (ECF 1 at 16). The Complaint further alleges that Federal Defendants violated Plaintiff's Fifth Amendment right by failing to close out Plaintiff's 2006 Report and failing to explain to CCF that the medical evaluation was inappropriate (*id.*). Resolving the question of whether the medical evaluation was appropriate, or whether the 2006 Report affected Dr. McCanns' subsequent evaluation would require the court to inquire about the merits or motives for Plaintiff's examination. Accordingly, the first claim alleges questions on the merits or motives of the decision to revoke Plaintiff's security clearance and the claim is therefore DISMISSED for lack of jurisdiction.

Similarly, Plaintiff's third claim goes directly towards the merits or the motives behind the revocation of Plaintiff's security clearance. Plaintiff's third cause of action alleges constitutional violations from Federal Defendants' failure to provide Dr. McCann with sufficient information for Dr. McCann to make appropriate conclusions and assessments (*id.* at 18). More specifically, Plaintiff argues that Federal Defendants' failure to "correct, remedy, or supplement the information provided" to Dr. McCann constitutes a constitutional violation (*id.*). Inherently, this court's review of information provided to Dr. McCann and its use that led to his conclusions would result in the review of the merits behind security clearance decision. Accordingly, this court lacks jurisdiction over Plaintiff's third claim and therefore DISMISSES it.

> ii. *The Court also Dismisses Plaintiff's Complaint as to Dr. McCann for Lack of Jurisdiction.*

Regarding Dr. McCann, Plaintiff's Complaint only attributes conduct to Dr. McCann in the third cause of action (*see* ECF 1 at 16–18). As to the Motion, Dr. McCann argues that Plaintiff's

8

Complaint is procedurally deficient under the Utah Malpractice Act and that any possible claims are time barred (*id.* at 2–4). The Motion construes the entire action as malpractice action and argues that any claim raised in Plaintiff Complaint, regardless of its basis, was precluded under the Utah Malpractice Act (*id.* at 4). Dr. McCann did not, however, address whether the Utah Malpractice Act could preclude a federal cause of action.

Recognizing that Plaintiff alleges federal constitutional violations, the court on its own inquired into the question of whether the Utah Malpractice Act could preempt a claim under *Bivens*. The court found *Harrell by & through next friend Harrell v. S. Jordan Care Grp., LLC*, No. 2:19-CV-00315-PMW, 2020 WL 1550788, at *2–3 (D. Utah Mar. 31, 2020), which is instructive. The plaintiff there brought claims under the Fair Housing Act (FHA), and after looking at how the Utah Supreme Court had defined the scope of the Utah Malpractice Act, the court held the FHA claims were not preempted by the Utah Malpractice Act because they were only tangentially related to the healthcare services provided. *Id.*

The *Harrell* case was raised to the parties at the hearing held on June 25, 2024. Counsel for Dr. McCann stated that he was not ready to address the case, and the court ultimately ordered a supplemental brief addressing the preemption question under the Utah Malpractice Act and addressing *Harrell* (*see* ECF 58). In Dr. McCann's brief he first stated that he was unable to find any cases in which the Utah Malpractice Act trumped a federal cause of action (ECF 59 at 1). He also argued, on the application of *Harrell*, that unlike allegations of discriminatory practices, the present action is not tangentially related to the Utah Malpractice Act because any liability alleged against Dr. McCann is directly related to his diagnosis, "which relate to or arise out of health care rendered" (*id.* at 4). Further, Dr. McCann argues that the jurisdiction requirements of *Bivens* and the Utah Malpractice Act are not in conflict (*id.*). Plaintiff responded and simply argued that

9

*Harrell* applies here and thus his claims are not barred (ECF 62 at 2–3).

Despite the supplemental briefing by the parties, the court need not reach this question here. As stated, the only claim that explicitly attributes any conduct to Dr. McCann is the third cause of action (*see* ECF 1 at 16–18). As this court has explained above, the question presented in Plaintiff's third claim is one that raises non-justiciable matters. Accordingly, Plaintiff's third cause of action, and consequently Complaint, is DISMISSED as to Dr. McCann for lack of subject matter jurisdiction under the same rationale as the Federal Defendants.[2]

### iii. Plaintiff's Second Claim, although Justiciable, is not Sufficiently Pled.

The only surviving claim is the second, which only explicitly names Defendant Vario Jay or Doe Defendants (ECF 1 at 17). Unlike the first and third claims, Plaintiff's second claim shifts focus from the merits and motives of the revocation and instead centers on due process he alleges he was not afforded (*id.*). Plaintiff alleges he did not learn about the Reconsideration Determination until 2017 because it was not sent to his home address but rather his email and address at Dugway (*id.* at 14, 17). Plaintiff's second claim alleges that Defendant Vario Jay or Doe Defendants' failure to provide Plaintiff with the Reconsideration Determination resulted in Plaintiff's inability to timely appeal the decision in the Reconsideration, which resulted in a violation of his rights under the Fifth Amendment Due Process Clause (*id.* at 17). As pled, this does not appear to address the merits or process of the revocation, but rather, that Plaintiff was not afforded proper notice (*id.* at 5, 17).

In support of his second claim, Plaintiff cites to *Coleman v. Utah State Charter Sch. Bd.*,

---

[2] The court notes that Dr. McCann did not raise this argument, but the case law cited by the Federal Defendants is clear the court lacks jurisdiction over Plaintiff's third claim. And the court may sua sponte consider subject matter jurisdiction at any time. *See Arbaugh*, 546 U.S. at 506. The court thus, pursuant to the "just, speedy, and inexpensive determination of every action and proceeding," dismisses the claim against Dr. McCann under the same rationale. Fed. R. Civ. P. 1.

10

673 F. App'x 822, 833 (10th Cir. 2016), which in turn cites to *Greene v. McElroy*, 360 U.S. 474, 508 (1959). Plaintiff alleges he has a liberty and property interest in maintaining his security clearance for his employment protected by the Fifth Amendment Due Process Clause (ECF 1 at 5–6). As discussed below, however, *Coleman* and *Greene* are distinguishable from this case.

In *Coleman*, the Tenth Circuit acknowledged that the Supreme Court had previously recognized Due Process rights for a private defense contractor that had his security clearance revoked without a hearing. *Coleman*, 673 F. App'x at 832; *see also Greene*, 360 U.S. at 508. The court in *Coleman* restated the general holding in *Greene* that a "summary" revocation with no hearing violated the contractor's ability to follow a chosen profession free from unreasonable governmental interference under the Fifth Amendment. *Coleman*, 673 F. App'x at 832. But the court in *Coleman* also recognized the Tenth Circuit has yet to extend this recognized constitutional theory in private employment beyond the specific cases in which the United States Supreme Court had done so itself. *Id.* at 833 ("we acknowledge that the Supreme Court has established a right against arbitrary governmental interference with private employment and that it is a recognized constitutional theory through which claims can plausibly be brought. The right is heavily fact-dependent, though, and to overcome any claim of qualified immunity, a plaintiff would have to plead facts far more similar to Supreme Court precedent than those that Coleman has presented.").

Plaintiff's use of *Coleman* is inapposite here for a number of reasons. First, although the court is not addressing qualified immunity here, the ultimate holding in *Coleman* cuts against Plaintiff because this case does not involve the regulation of business, defense contracting, or banking–contexts in which the alleged theory under the Fifth Amendment has been previously applied. Moreover, Plaintiff's interpretation of *Coleman* would be at odds with *Hill* and *Duane*. In *Hill*, the Tenth Circuit explicitly held that that the plaintiff there "did not have a constitutional

11

property or liberty interest in his security clearance," largely because it is under the executive power's purview, and not the court's, to administer access to national secrets. *Hill*, 844 F.2d at 1411. The court in *Duane* did not address the liberty or property interest question in its decision, but it did reaffirm that this court lacks jurisdiction to review the merits of a security clearance revocation, and limits this court's review on a revocation as to whether "an agency violated its own procedural regulation when revoking or denying a security clearance." *Duane*, 275 F.3d at 992. A close reading of these cases makes clear that the actionable right recognized in *Greene* and later affirmed in *Coleman* is limited, *Coleman*, 673 F. App'x at 833, and separate from the holding in *Hill* as explained below.

This case is distinguishable from *Greene* where the court determined that a private employee who had his security clearance revoked had to be afforded a hearing that comported with "traditional procedural safeguards of confrontation and cross-examination," 360 U.S. at 493. Plaintiff's second claim does not allege he was not afforded these safeguards, but rather relates to the process used to deliver his Reconsideration Determination. Also different from *Greene* is that Plaintiff's Complaint does not allege that Plaintiff was a private employee, or that this right is equally recognizable as to public employees. Accordingly, *Greene* and the present case as pled are not alike. And like in *Hill*, the court holds the cases Plaintiff cites to do not support his claim to have a constitutional property or liberty interest in his security clearance. 844 F.2d at 1411.

Given this reasoning, the court analyzes Plaintiff's second claim under *Hill* and *Duane*. Following these cases, the court's scope of review in decisions revoking or denying a security clearance is narrow, and limited only as to whether an agency followed its own procedural regulations. *See Duane*, 275 F.3d at 993. Considering this standard, the court finds that Plaintiff has failed to state a plausible claim. In order to state a plausible claim, the Complaint must allege

12

that some sort of internal procedural regulation was violated by the relevant agency, which is not alleged in Plaintiff's Complaint. *See id.*; *but see also Hill*, 844 F.2d at 1412 (holding that the mere existence of procedural rules by the Department of Defense in the potential revocation of a security clearance does not inherently attach actionable constitutional rights to them). Even if there was a lapse that resulted in Plaintiff being unable to timely appeal his Reconsideration Determination, Plaintiff has not alleged any procedure or regulation that Defendant Vario Jay or anyone else has violated in forwarding the Reconsideration Determination to the address at Dugway. Accordingly, Plaintiff's second claim is not sufficiently pled and is therefore DISMISSED.[3]

## IV.   CONCLUSION & ORDER

Accordingly, and for the reasons herein, the court hereby GRANTS the Federal Defendants' Motion (ECF 39) and GRANTS IN PART Dr. McCann's Motion (ECF 42). Plaintiff's first and third claims against the named defendants in each respective claim present non-justiciable questions and are DISMISSED without prejudice for lack of subject matter jurisdiction.[4] Plaintiff's second claim against Defendant Vario Jay and Doe Defendants is DISMISSED without prejudice for failure to state a plausible claim. The court also does not grant fees at this time.

DATED this 29 August 2024.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[3] Because the court dismisses Plaintiff's second claim on failure to pled grounds under this reasoning, the court does not consider Federal Defendants' other arguments regarding the plausibility of a *Bivens* claim.

[4] Despite Defendants' request that the dismissal of Plaintiff's Complaint be with prejudice, claims dismissed for lack of jurisdiction are typically dismissed without prejudice. *See Eagar v. Drake*, 829 F. App'x 878, 885 (10th Cir. 2020) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("Dismissals for lack of jurisdiction [are] without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims.")).